## McINTOSH *v.* GROOMES.

1. CONTRACTS—CONSTRUCTION—INTENT.
   The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties, and to this rule all others are subordinate.

2. SAME—CONTRACT MUST BE CONSTRUED AS A WHOLE.
   To arrive at a proper interpretation of particular language, the entire contract must be considered.

3. SAME—EVERY WORD MUST BE CONSIDERED.
   Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.

4. SAME—CONSTRUCTION—CONTRACT HELD AMBIGUOUS.
   In a written contract whereby plaintiff transferred to defendant the exclusive right to manufacture and sell certain valves under a patent owned by plaintiff, a provision by which defendant agreed to pay to plaintiff for said right "from the sale of said valves the sum of one thousand

dollars per annum, payable at the rate of ten cents for each and every valve sold," when construed in connection with a further provision that in case defendant did not have sufficient funds with which to pay the royalties due from the valves sold he might give a note therefor, *held*, ambiguous as to whether plaintiff is entitled to recover $1,000 per year in the event that the royalty agreed upon and computed on the valves sold would not equal that amount.

5. SAME—ORAL TESTIMONY ADMISSIBLE TO DISCOVER INTENT OF AMBIGUOUS CONTRACT.

   If ambiguous terms are used in a written contract, the preliminary negotiations may be considered, not to vary or contradict the plain terms of the instrument, but to aid the court in determining the intent with which such words were used.

6. SAME—CONSTRUCTION PLACED UPON AMBIGUOUS CONTRACT BY PARTIES ADMISSIBLE IN EVIDENCE.

   If the contract has been in part performed, the construction placed by the parties themselves on terms in it which are indefinite and uncertain may be shown and should be considered by the court.

7. SAME—ORAL TESTIMONY—ADMISSIBILITY.

   Where the language of the written contract was ambiguous as to whether defendant agreed to pay to plaintiff $1,000 per year in the event the royalties agreed upon would not equal that amount, the testimony of plaintiff that defendant guaranteed the payment of $1,000 per year was admissible.

   FELLOWS and WIEST, JJ., dissenting.

Error to Washtenaw; Sample (George W.), J. Submitted January 16, 1924. (Docket No. 74.) Decided June 2, 1924.

Assumpsit by Grace McIntosh against Harry M. Groomes on a contract for the payment of royalties. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Jones & Stuhrberg,* for appellant.

*Louis E. Howlett,* for appellee.

SHARPE, J.    By written agreement, plaintiff transferred to defendant the exclusive right to manufacture and sell certain valves under a patent of which she was the owner.    The contract contained the following provisions:

"It is further mutually understood and agreed that the said Harry M. Groomes, party of the second part, is to pay to the said party of the first part, from the sale of said valves, the sum of one thousand dollars per annum, payable at the rate of ten cents for each and every valve sold, said payments of said royalties to be paid to the said Grace McIntosh during her natural life unless the patent and its renewals shall previously expire.

"It is further understood and agreed that in the event that the said party of the second part has not sufficient funds with which to pay the royalties to the said Grace McIntosh due from the valves sold, then in such case, the said Harry M. Groomes shall have the option of paying to the said Grace McIntosh the said royalties in the form of a note payable six months after date.

"It is further mutually understood and agreed by and between the parties hereto that the said party of the second part shall begin the manufacture of said valves within ninety days from the date of signing this instrument."

Declaring on the contract, she brings this suit to recover at the rate of $1,000 per year from July 5, 1918, the date of the contract, to July 5, 1921.    Her bill of particulars, filed pursuant to demand therefor, set forth this claim.    It is defendant's contention that under the contract he was required to pay only at the rate of ten cents each for the valves sold, and that plaintiff has been paid an amount in excess thereof. The plaintiff offered the contract in evidence, testified as to the amount due under it, and rested.    Defendant's counsel then moved for a directed verdict for the reason stated.    The court expressed "a feeling that there is no liability unless there is a sale of

products." The plaintiff then asked and was permitted to offer further proof. She testified, over defendant's objection, as to the negotiations leading up to the execution of the contract, in which defendant said "he would guarantee that thousand dollars and I was to have a guaranty of a thousand dollars a year." The trial court struck out this testimony, and afterwards directed a verdict for defendant, holding that the language of the contract was not ambiguous and that under it plaintiff was entitled to recover only ten cents each on the valves sold by defendant. Plaintiff's motion for a new trial, based largely on such action, was denied. She here reviews the judgment entered for the defendant by writ of error.

The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate. To arrive at a proper interpretation of particular language, the entire contract must be considered.

"Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument." 6 R. C. L. p. 838.

"It is also a rule of construction that every word and sentence shall be given effect where it is possible to do so without destroying the manifest intent of the parties." *Switzer* v. *Manufacturing Co.*, 59 Mich. 488, 497.

Applying this rule to the language used, it can hardly be contended that doubt and uncertainty does not exist as to whether plaintiff is entitled to recover $1,000 per year in the event that the royalty agreed upon computed on the valves sold would not equal that amount. To hold otherwise, we must eliminate the words "the sum of one thousand dollars per annum" as surplusage. We must give little or no effect to

the provision in the next paragraph that should defendant not have "sufficient funds with which to pay the royalties to the said Grace McIntosh due from the valves sold," he may give a note therefor. We must also find that plaintiff, while providing in the contract that defendant should begin the manufacture of the valves within 90 days, was content to permit him to discontinue at any time without provision that a failure to manufacture would terminate the exclusive right granted to him. She could, of course, so agree, but it would be very unusual for a person, possessed of what was doubtless considered a valuable patent, to confer such a right without securing at least the protection of a minimum payment if manufacture was not continued.

On the other hand, the contract indicates that the sums to be paid plaintiff were to be derived from a particular fund, that secured from a sale of valves, and computed "at the rate of ten cents for each and every valve sold." In support of this claim, defendant cites the following: *Mason* v. *Warner,* 43 Mich. 439; *Smith* v. *Ross,* 51 Mich. 116; *Chandler* v. *Carey,* 64 Mich. 237 (8 Am. St. Rep. 814).

Were the writer of this opinion compelled to interpret the contract as it reads, he would be strongly inclined to adopt the interpretation placed on it by plaintiff. A number of my brethren differ from me as to this. Such difference of opinion, I think, is quite conclusive that the language used, taken as a whole, is ambiguous, that is, of doubtful and uncertain meaning. Fortunately, under the rules of law applicable in such cases, we need not determine the rights of the parties upon the interpretation which a majority of the court shall place upon it. If ambiguous terms are used, the preliminary negotiations may be considered, not to vary or contradict the plain terms of the instrument, but to aid the court in determining the intent with which such words were

used.    *Kendrick* v. *Beard,* 81 Mich. 182; *Michigan Crown Fender Co.* v. *Welch,* 211 Mich. 148, 164 (13 A. L. R. 896) ; *Brawley* v. *United States,* 96 U. S. 168, 173; *United States* v. *Bethlehem Steel Co.,* 205 U. S. 105 (27 Sup. Ct. 450) ; 6 R. C. L. p. 839; 13 C. J. p. 544; 5 Wigmore on Evidence (2d Ed.), § 2472.

If the contract has been in part performed, the construction placed by the parties themselves on terms in it which are indefinite and uncertain may be shown and should be considered by the court.    It will always be assumed that the parties themselves understood what was meant by the language used and are not liable to be mistaken about it, and if, in performing under it, they have treated the uncertain or ambiguous terms as having a particular meaning, the construction thus placed upon it by them will have great weight with a court.    *Switzer* v. *Manufacturing Co., supra; Farnsworth* v. *Fraser,* 137 Mich. 296, 300.

I think that the court was in error in striking out the proof offered by plaintiff.    By it she was not seeking to establish an oral contract.    This she could not do under her declaration.    Her testimony in this respect was not admissible to prove what the terms of the contract entered into were, but was admissible to aid the court in interpreting the meaning of the uncertain and ambiguous language contained in it.

The judgment is reversed and a new trial granted, with costs to appellant.

Clark, C. J., and McDonald, Bird, Moore, and Steere, JJ., concurred with Sharpe, J.

Fellows, J. (*dissenting*).    Plaintiff declared on the written contract alone and as a part of the declaration set it out in full.    Her oral testimony was that defendant "said he would draw up another contract if it was not satisfactory;" she also gave the testimony quoted by my Brother Sharpe that defendant said "he

would guarantee that thousand dollars and I was to have a guaranty of a thousand dollars a year." Unless it pertained to a proposed new contract, the last quoted sentence is in direct conflict with the provision of the contract declared upon that the thousand dollars was payable "from the sale of said valves." It was not explanatory of the contract or an aid to its construction. If permitted to stand and the case sent to the jury, they might well have found for plaintiff on the theory that defendant during the preliminary negotiations orally guaranteed the payment of $1,000 a year rather than upon the terms of the written agreement declared upon that from the sale of valves he had agreed to pay her that sum. I think this testimony clearly tended to vary and change the terms of the written contract and that the trial court properly struck it out.

With this testimony stricken out it became the duty of the court to direct a verdict for defendant. The payments were to be made from a specific fund, *i. e.*, from the sale of the valves, and the record discloses that a sufficient number of valves had not been sold to require the payment of any sum to the plaintiff under the terms of the written contract beyond the amount she had received. Indeed she had been largely overpaid. There was no money in the fund from which the parties had agreed the payments should be made.

In 13 C. J. p. 631, it is said:

"A contract or promise to pay may be restricted to a particular fund, so as to make the raising or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced until the fund is realized, unless the failure to realize or collect the fund from which payment is made is due to the neglect, or to the unreasonable refusal to act, of the promisor, or is otherwise attributable to him. So, where the contract of the parties is that the creditor shall look to a particular

fund, he cannot, on the failure of such fund not attributable to the fault of the debtor, hold the debtor personally responsible, unless the contract contains stipulations amounting to a guaranty that the funds specified shall be sufficient for payment, or unless the promisee is induced to perform by the promise that a third person who, the promisor claims, owes him a debt or duty, shall pay the agreed price to the promisee, in which case the promisor is primarily liable to pay the contract price, although his debtor does not pay, or the debt or the duty does not exist."

See, also, *Smith* v. *Ross*, 51 Mich. 116; *Mason* v. *Warner*, 43 Mich. 439.

In the instant case the contract alone is counted upon. No claim is made in the declaration that defendant was negligent in making sales of the valves, or in failing to provide the fund from which the payment was to be made. Nor is it alleged in the declaration that by reason of defendant's transferring the contract to a company he has put it out of his power to comply with its provisions and is, therefore, liable, a point here raised but which I do not find was made either upon the trial or by the motion for a new trial.

I think the judgment should be affirmed.

WIEST, J., concurred with FELLOWS, J.