HENRY v J. B. PUBLISHING COMPANY

1. MASTER AND SERVANT—CORPORATIONS—EMPLOYEE COMPENSATION—
PROFIT-BASED BONUS—PURPOSE.

The purpose of profit-based bonus agreements between corpora-
tions and their employees is to encourage greater efforts in
behalf of the corporation on the part of employees participating
in such a plan.

2. CONTRACTS—DISPUTES—DUTY OF COURT—INTENT OF PARTIES.

The primary role of a court in deciding a case involving a
contract dispute is to ascertain the intent of the parties, and
this must be done from an examination of the terms of the
contract itself where at all possible.

3. CONTRACTS—AMBIGUITY—ADDITIONAL EVIDENCE.

If a contract term is ambiguous or rendered indefinite or uncer-
tain when applied to the facts of a particular situation, then
additional evidence should be considered to determine what the
parties intended.

4. MASTER AND SERVANT—CORPORATIONS—EMPLOYEE COMPENSATION—
PROFIT-BASED BONUS—NET PROFITS—INSURANCE PROCEEDS.

Life insurance proceeds paid to a corporation upon the death of
its president were not includible in the net profits of the
corporation for the purpose of determining the amount of a
bonus due to an employee of the corporation where the amount
of the bonus was based on the net profits of the corporation,
because inclusion of the life insurance proceeds in the net
profits of the corporation would serve as a windfall to the
employee, and would not further the generally understood
purpose of such bonus agreements.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 53 Am Jur 2d, Master and Servant §§ 74, 84.

[2] 20 Am Jur 2d, Courts §§ 139–141.

Validity of contractual provision limiting place or court in which
action may be brought. 56 ALR2d 300.

[3] 17 Am Jur 2d, Contracts §§ 75–84.

5. MASTER AND SERVANT—CORPORATIONS—EMPLOYEE COMPENSATION—
    PROFIT-BASED BONUS—NET PROFITS—INSURANCE PROCEEDS.

The fact that a corporation's payment of premiums for its president's life insurance policy naming the corporation as beneficiary out of its profits may have acted to reduce an employee's profit-based bonus does not require the inclusion of the life insurance proceeds in the corporation's net profits for the purpose of determining the amount of the employee's bonus; maintenance of such a policy on the life of the corporation's president was a legitimate expenditure and served a valid corporate purpose.

Appeal from Manistee, Charles A. Wickens, J. Submitted Division 3 March 7, 1974, at Grand Rapids. (Docket No. 17767.) Decided July 23, 1974.

Complaint by William J. Henry against the J. B. Publishing Company for monies due under an employment contract. Judgment for plaintiff. Defendant appeals. Reversed and remanded for further proceedings.

*John E. Hart,* for plaintiff.

*Murchie, Calcutt & Sondee,* for defendant.

Before: T. M. BURNS, P. J., and V. J. BRENNAN and BASHARA, JJ.

V. J. BRENNAN, J. Defendant, the J. B. Publishing Company, appeals from a judgment of the Manistee Circuit Court entered in favor of plaintiff, William J. Henry, for $42,687.96.

Plaintiff was employed by defendant as general manager of the Manistee News Advocate, a newspaper published by defendant corporation. Plaintiff was employed by defendant in this capacity from March 1, 1964 until December 3, 1970, when he was relieved of his responsibilities as general manager. He continued in the employ of defendant in

other capacities, though, until he quit on March 17, 1971.

In August of 1971, plaintiff brought this action against defendant corporation seeking to recover an amount of money which, he alleged, defendant owed him under a profit-based bonus agreement he entered into with defendant's president, Mr. John Batdorff. Defendant answered plaintiff's complaint denying the existence of any formal bonus arrangement. Defendant also filed a counterclaim against plaintiff seeking to recover certain overpayments which were alleged to have been made to plaintiff. A nonjury trial was held on June 7, 1972, before Judge Charles A. Wickens who, by a written opinion dated September 20, 1972, found in favor of plaintiff. A supplemental opinion confirming the earlier decision was filed on January 10, 1973, and defendant's motion for a new trial was denied.

In the proceedings below plaintiff testified that he was employed by defendant as general manager at a yearly salary of $10,400. He further testified that in the years 1968 through 1970 he received, in addition to his yearly salary, a bonus based on the "net profits" of the company. The alleged bonus agreement provided that the first $15,000 of net profits was to be retained by the J. B. Publishing Company with the next $5,000 of net profits belonging to plaintiff. If the net profits exceeded $20,000, the excess was to be divided evenly between plaintiff and the defendant corporation. Plaintiff testified that in late May or early June of 1970, a similar arrangement was agreed to by Mr. Batdorff for the period beginning May 1, 1970 and ending April 30, 1971, this being defendant corporation's fiscal year. This bonus agreement, like the others, however, was never reduced to writing.

On October 30, 1970, Mr. Batdorff died. A term insurance policy in the sum of $100,000 had been taken out on Mr. Batdorff's life in 1968 with defendant corporation named as beneficiary. The premium payments for this policy were paid out of the regular funds of the business and amounted to over $2,000 a year. Upon Mr. Batdorff's death, the $100,000 was paid to defendant corporation. It was plaintiff's contention in the court below, and the trial court expressly found, that the proceeds defendant corporation received from the life insurance policy on Mr. Batdorff's life should have been included in the "net profits" of the corporation for the purpose of determining plaintiff's bonus. It is from this determination that defendant now appeals.

Defendant argues that the lower court erred in holding that the proceeds the corporation received from the insurance on Mr. Batdorff's life were properly includible in the net profits of the corporation for the purpose of determining plaintiff's bonus under the profit-based bonus agreement. Defendant contends, and correctly we feel, that such a conclusion ignores the basic purpose behind such bonus agreements—to encourage greater efforts in behalf of the corporation on the part of employees participating in such a plan. 5 Fletcher Cyclopedia of Corporations, § 2143. Consideration of the generally understood purpose of profit-based bonus agreements is essential in a contract dispute involving the meaning to be given a certain term where, as here, the central determination required for a proper resolution of the case turns upon what the parties intended.

In deciding a case involving a contract dispute the primary role of a court is to ascertain the intent of the parties. *McIntosh v Groomes,* 227

Mich 215; 198 NW 954 (1924). This, of course, must be done from an examination of the terms of the contract itself where this is at all possible. *Montgomery v Taylor & Gaskin, Inc,* 47 Mich App 269; 209 NW2d 472 (1973). If, however, a contract term is ambiguous or rendered indefinite or uncertain when applied to the facts of a particular situation then additional evidence should be considered to determine what the parties intended. *Keller v Paulos Land Co,* 381 Mich 355; 161 NW2d 569 (1968); *McIntosh v Groomes, supra.* In applying the above rules to the facts of the case before us we are guided by the following language from *Fox v Detroit Trust Co,* 285 Mich 669, 677; 281 NW 399, 401 (1938):

> "We are well aware of the settled rules of law, so well established that citation of authority therefor is unnecessary, that it is not the province of the court by construction or by the addition of words or punctuation to remake the contract of the parties or to find a meaning not intended. Where ambiguity exists, however, it is the duty of the court to determine, if possible, the true intent of the parties by construction of the instrument."

In the case at bar the bonus agreement was based on the "net profits" of the corporation. No precise definition of that term constituted a part of the agreement between plaintiff and defendant and the conflicting testimony of plaintiff's and defendant's expert witnesses illustrated the uncertainty of the term when an unusual item was sought to be included therein. As stated earlier, what we are essentially concerned with in a case like this is resolving the contractual dispute by seeking to effectuate the intention of the parties. This should be the primary consideration in disputes such as this and it is in furtherance of this

effort that the testimony of expert witnesses becomes helpful. Through such testimony an accepted procedure or common practice in the profession with respect to the treatment of such items can be shown. This, of course, would all have a bearing on what the parties intended when they entered into their agreement. But where, as here, the testimony of the experts as to the proper handling of such items is in hopeless conflict the central inquiry should revolve around the parties' intent—not the choosing of one accounting practice over another. It is at this point that the consideration of the purposes behind such bonus agreements has its most beneficial effect. It helps to place in proper perspective the overall intention of the parties as to the manner in which the bonus was to be computed—from the operating profits of the defendant corporation. The inclusion of the life insurance proceeds in the "net profits" of the defendant corporation would serve as a windfall to plaintiff under the circumstances here presented. These proceeds were not realized because of plaintiff's efforts on behalf of the corporation and their inclusion in the net profits would not further the generally understood purpose of such bonus agreements. The fact that the premium payments may have acted to reduce plaintiff's bonus in previous years is of no consequence. The maintenance of such a policy on the life of the corporation's president was a legitimate expenditure and served a valid corporate purpose.

Under the circumstances here presented we find that the trial judge erroneously concluded that the life insurance proceeds were properly includible in the net profits of the corporation for the purpose of determining plaintiff's bonus. Therefore, the decision of the trial judge is reversed and the case

remanded for proceedings consistent with this opinion.

All concurred.