# STATE OF MICHIGAN

# COURT OF APPEALS

---

SCOTT SIMMONS,

        Plaintiff-Appellant,

v

DAVID A. VANT, Co-Personal Representative for
the Estate of BONNIE VANT, NANCY L.
NELSON, Co-Personal Representative for the
Estate of BONNIE VANT, DAVID A. VANT,
Trustee of the BONNIE L. VANT TRUST,
NANCY L. NELSON, Trustee of the BONNIE L.
VANT TRUST, VERTICAL SOLUTIONS
COMPANY, BERT VANT, DIANE WISE, ALL
KNOWN OR UNKNOWN HEIRS
SUCCESSORS OR ASSIGNS OF BONNIE
VANT,

        Defendants-Appellees.

UNPUBLISHED
December 21, 2017

No. 334351
Ingham Circuit Court
LC No. 16-000244-CB

---

Before: Murphy, P.J., and M. J. Kelly and Swartzle, JJ.

Per Curiam.

Plaintiff Scott Simmons appeals as of right the trial court's order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(8) in this action involving claims of promissory estoppel and breach of contract arising out of a business agreement. We affirm.

In 2002, Simmons and Bonnie Vant formed an elevator parts and services company known as The Vertical Solution Company (VSC). Simmons and Vant initially had an oral agreement with respect to the business venture, which was later reduced to writing. The written agreement provided, in part, that "Simmons will be issued 90% of the shares as a signing bonus when he becomes fully employed by [VSC] and begins to draw a salary." We shall refer to this provision as the "employment clause." There is no dispute that, initially, Vant was VSC's sole

-1-

shareholder.[1] The written agreement further provided that "[i]n the event of the death of Bonnie Vant it is intended that Scott Simmons assume ownership of [VSC] and the 10% will go to the estate of Bonnie Vant and no further claims of Bonnie Vant's estate will be made on [VSC]." We shall refer to this provision as the "death clause."

Vant died in 2015, at which time Simmons had not yet become employed by VSC, which he concedes. A dispute then arose between Simmons and defendants, who consisted of various representatives of Vant's probate and trust estates and others, with respect to the ownership interests in VSC. Simmons contended that the agreement's death clause operated to give him a 90% ownership interest in VSC upon Vant's death, with the remaining 10% going to Vant's estate, even though the employment clause had never been implicated. Essentially, Simmons's position was that under the agreement he could obtain a 90% ownership interest in VSC either by becoming a full-time, salary-drawing employee under the employment clause, which did not transpire, or by Vant's passing under the death clause, regardless of his employment status at the time of Vant's death. Defendants maintained that Simmons never satisfied the employment clause and that the written agreement lacked mutuality of obligation because Simmons was not required to seek full-time employment with VSC and because the death clause allowed Simmons to obtain a 90% interest in VSC for no return performance and simply on the basis of Vant's death.

Simmons filed a complaint against defendants, alleging breach of contract and promissory estoppel. Defendants subsequently filed a motion for summary disposition under MCR 2.116(C)(8) and (10), arguing lack of mutuality of obligation, lack of a definite promise by Vant to convey ownership to Simmons upon her death for purposes of the promissory estoppel claim, and lack of compliance with the requirements for making a valid will.[2] Simmons responded that mutuality of obligation did exist, where the written agreement was not a full integration of the business agreement or venture, and where parol evidence showing all of Simmons's many contributions and efforts to advance the business established the consideration and mutuality of obligation necessary to contractually support a transfer of ownership upon Vant's death. Simmons further contended that, as to promissory estoppel, there were words, writings, and conduct that reflected a clear and definite promise by Vant to transfer ownership of VSC to Simmons at her death. And Simmons maintained that the written agreement was not subject to the requirements of a will, as the agreement merely dictated what interest in VSC that Vant actually held, which interest would in turn become part of her estate and distributed to

---

[1] The written agreement contains language at the start which states that VSC is a business venture between Simmons and Vant that is divided "10% Bonnie Vant" and "90% Scott Simmons." Although this language suggests that Simmons had a 90% ownership interest from the beginning, no party makes that assertion, and later language makes clear that a contingency existed.

[2] Defendants compared the written agreement's death clause to a will, maintaining that witness signatures were necessary to make any disbursement of a VSC ownership interest to Simmons valid under the law governing wills.

heirs. Simmons also argued that he was the party entitled to summary disposition, MCR 2.116(I)(2). The trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(8). The court found that if the agreement were interpreted as argued by Simmons, mutuality of obligation would be lacking, and it concluded that the agreement only contemplated giving Simmons an ownership interest if he became fully employed by VSC and began drawing a salary, which never occurred. The trial court summarily dismissed the promissory estoppel claim because the written agreement did not contain a clear and definite promise that Simmons would obtain 90% ownership upon Vant's death if Simmons had no existing ownership interest under the employment clause. The court also agreed with defendants' will-related arguments. The trial court did give Simmons permission to file an amended complaint, so as to give him an opportunity to present allegations regarding parol evidence and to support his argument that the written agreement did not constitute the full agreement between Simmons and Vant.

Simmons proceeded to file an amended complaint consistent with his summary disposition arguments concerning parol evidence. He again alleged claims of breach of contract and promissory estoppel. Defendants later filed a motion for summary disposition, essentially making the same arguments as presented in their earlier motion, and Simmons responded in similar fashion to his previous arguments. The trial court again granted summary disposition in favor of defendants on Simmons's amended complaint. The court's general reasoning was that the written agreement alone governed the dispute because its language was plain and unambiguous, providing Simmons with a 90% ownership interest in VSC solely upon satisfaction of the employment clause, which did not take place, with the death clause only giving some direction where, previous to Vant's death, Simmons had already obtained a 90% ownership interest pursuant to the employment clause. The court also ruled, for purposes of promissory estoppel, that there was no clear and definite promise by Vant that Simmons would obtain a 90% interest in VSC simply based upon Vant's death. Simmons appeals as of right.

We review de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "[Q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). We likewise review de novo the question whether contractual terms are ambiguous. *Rossow v Brentwood Farms Dev, Inc,* 251 Mich App 652, 658; 651 NW2d 458 (2002). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). In light of this rule, "[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965); see also *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999). However, a court will not create ambiguity where the terms of the contract are clear. *Frankenmuth Mut*, 460 Mich at 111. Parol evidence regarding contract negotiations, or concerning prior or contemporaneous agreements that vary or contradict the written contract, is inadmissible to alter the terms of a contract that is clear and unambiguous. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998). Parol evidence is admissible to determine the threshold question whether a written contract constituted

an integrated instrument showing a complete expression of the parties' agreement, as opposed to a partial integration where essential elements were not put in writing. *Id.* at 492-493.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).[3] "The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Mallory v Detroit*, 181 Mich App 121, 127; 449 NW2d 115 (1989). " 'Mutuality of obligation' means that both parties to an agreement are bound or neither is bound, that is, mutuality is not present where one party is bound to perform, but not the other." *Reed v Citizens Ins Co of America*, 198 Mich App 443, 449; 499 NW2d 22 (1993); see also *Bancorp Group, Inc v Mich Conference of Teamsters Welfare Fund*, 231 Mich App 163, 171; 585 NW2d 777 (1998).

The trial court determined that the employment clause served as the only mechanism by which Simmons could obtain the 90% interest in VSC and that the death clause was solely implicated if Simmons had previously obtained a 90% interest pursuant to the employment clause, with the death clause merely directing, in that instance, that the remaining 10% would go to Vant's estate. The trial court focused on the language in the death clause that provided that Vant's estate would receive "*the* 10%" interest upon her death, which the court viewed as envisioning circumstances in which Vant only had a 10% interest in VSC at the time of her death, and that would only be the situation had Simmons already obtained his 90% interest pursuant to the employment clause. (Emphasis added.) We agree with the trial court's construction of the written agreement and hold that the plain and unambiguous language of the agreement solely provided for Simmons obtaining a 90% ownership interest if he satisfied the employment clause, which never occurred. Had the death clause been intended to operate as claimed by Simmons, it certainly would have had language comparable to that found in the employment clause, e.g., "[i]n the event of the death of Bonnie Vant, Simmons will be issued 90% of the shares in VSC." Instead, the death clause clearly contemplated a scenario in which Simmons had already obtained a 90% interest in VSC under the employment clause, with the death clause simply directing disbursement of Vant's 10% interest to her estate upon her death and prohibiting the estate from attempting to take a greater share of VSC or to make an ownership claim. Finding no ambiguity, parol or extrinsic evidence that might conflict with the written agreement cannot be considered. Accordingly, there was no breach of contract as a matter of law. Moreover, there was no clear and definite promise by Vant to give Simmons a

---

[3] "The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686-687; 599 NW2d 546 (1999). The promise must be clear and definite. *State Bank of Standish v Curry*, 442 Mich 76, 85; 500 NW2d 104 (1993).

90% interest in VSC based solely on her death; therefore, the promissory estoppel claim fails as a matter of law.

Affirmed. Having fully prevailed on appeal, defendants are awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Michael J. Kelly
/s/ Brock A. Swartzle